NOT DESIGNATED FOR PUBLICATION

No. 129,060

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of I.G. and J.G.,
Minor Children.

MEMORANDUM OPINION

Appeal from Shawnee District Court; PENNY R. MOYLAN, judge. Submitted without oral argument. Opinion filed July 2, 2026. Remanded with directions.

*Rebekah A. Phelps-Davis*, of Phelps-Chartered, of Topeka, and *James E. Benfer III*, of McCullough, Wareheim & LaBunker, P.A., of Topeka, for appellant natural mother.

*Carolyn A. Smith*, assistant deputy district attorney, and *Michael F. Kagay*, district attorney, for appellee.

Before SCHROEDER, P.J., GARDNER and CLINE, JJ.

PER CURIAM: The natural mother (Mother) of J.G. (born in 2012) and I.G. (born in 2013) timely appeals from the district court's finding of unfitness and termination of her parental rights. Mother essentially raises four issues on appeal: (1) whether the district court properly exercised emergency jurisdiction; (2) whether Mother received effective assistance of counsel in the termination proceedings; (3) whether the district court erred in denying her motion for a new trial; and (4) whether the district court erred in finding her unfit.

We find the district court properly exercised temporary emergency jurisdiction based on the circumstances in which the children were taken into protective custody. The district court's continued exercise of emergency jurisdiction was proper based on

1

Mother's representations she was unaware of any child custody orders or proceedings in other states. However, after Mother filed her notice of appeal, a prior child custody order from New Jersey was entered into the record. This new evidence requires us to remand to the district court to determine whether the district court or the New Jersey court should exercise jurisdiction. Because this jurisdictional question may render further proceedings unnecessary, we decline to address the remaining issues.

FACTUAL AND PROCEDURAL BACKGROUND

Mother, J.G., and I.G. had travelled from New Jersey and stopped at a hotel in Topeka in October 2020. On October 16, 2020, Mother was packing up her car preparing to leave for their next destination and discovered methamphetamine and drug paraphernalia in the car she had been given the night before. Mother used the methamphetamine, and the children discovered her passed out in the back seat of the car. The children went to ask the hotel manager for help.

The manager and two housekeepers checked on Mother but were unable to wake her. Law enforcement were contacted and discovered Mother with the methamphetamine and paraphernalia. Mother was taken to the hospital for treatment, and the children were taken into protective custody.

On October 21, 2020, the State petitioned the district court to initiate children in need of care (CINC) proceedings. The natural fathers of the children (one known and one unknown) did not become participants in the proceedings. The State asked for emergency placement for the children because they had been travelling for months, Mother did not have stable housing, Mother's unlawful drug use caused her to be unable to care for the children, and there were no other appropriate adult caregivers for the children. The State noted Mother and the children were originally from New Jersey and asked the district court to inquire whether there were prior or pending child custody proceedings in New

2

Jersey for jurisdictional purposes. During the CINC hearing, a call was made to the relevant social services agency in New Jersey, who reported there was a prior case involving J.G., but Mother had custody and there were no cases pending.

Based on this information, both the State and Mother told the district court they did not believe emergency jurisdiction findings needed to be made. The district court found an emergency existed necessitating placing the children in the temporary custody of the Secretary of the Department for Children and Families. However, the district court found the limited information it had at the time did not require it to invoke the provisions of the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), K.S.A. 23-37,101 et seq.

Reintegration efforts were supervised by KVC but did not go well. In June 2021, the district court adjudicated the children as children in need of care. Mother was unable to follow through on the majority of her case plan tasks, eventually stopped having contact with her case workers, and began abusing drugs again. In May 2023, the district court found reintegration was no longer a viable option, and the children were ultimately placed with an aunt in New Jersey.

In April 2024, the State filed a petition to terminate Mother's parental rights. A termination hearing was held in August 2024. During the hearing, information obtained from New Jersey reflected there had been a previous case running from 2012 through 2016, but the children had been returned to Mother's custody, the case had been closed, and there were no subsequent reports in relation to the children. Mother asked the district court to consider a permanent custodianship instead of adoption. The district court declined.

The district court found Mother unfit and the conduct or condition rendering her unfit was unlikely to change in the foreseeable future. The district court found

termination of Mother's parental rights was in the children's best interests. The district court rejected Mother's argument that the UCCJEA controlled, and the district court failed to comply with the applicable provision. It found jurisdiction was obtained through temporary emergency jurisdiction at the outset of the proceedings, and Kansas became the home state for the children because there was no evidence of out-of-state judgments in conflict with the proceedings.

After Mother filed her notice of appeal, certified copies of an order from the Superior Court of New Jersey were filed on May 5, 2025, with the district court reflecting child-custody litigation in New Jersey had been terminated on April 2, 2019. Additional facts are set forth as necessary.

ANALYSIS

Mother argues the district court lacked subject matter jurisdiction over the proceedings because it did not properly establish emergency jurisdiction. The State asserts the district court had emergency jurisdiction; however, new evidence of a prior child custody order from New Jersey requires remand to the district court to determine whether jurisdiction is proper under the UCCJEA. We agree with the State.

Whether jurisdiction exists is a question of law subject to unlimited review. *City of Wichita v. Trotter*, 316 Kan. 310, 312, 514 P.3d 1050 (2022). To the extent this inquiry involves statutory interpretation, it likewise presents a question of law subject to unlimited review. *Nicholson v. Mercer*, 319 Kan. 712, 714, 559 P.3d 350 (2024).

Mother claims the district court did not properly exercise emergency jurisdiction because there was some indication there may have been a child custody order from New Jersey and the district court did not inquire to determine whether such an order existed. Her argument is largely conclusory, and she provides little actual analysis, no citation to

4

case law, and only makes passing reference to K.S.A. 23-37,204(c) and (d). But because Mother fails to explain why these subsections would control, we find Mother has abandoned this point. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017).

Mother fails to acknowledge the initial reason for the district court exercising emergency jurisdiction—a hotel manager found the children unattended in a parking lot after Mother passed out from using unlawful narcotics. On that basis, the district court properly exercised temporary emergency jurisdiction under K.S.A. 23-37,204(a), which provides:

> "A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse."

At best, the record thereafter reflects uncertainty whether there was ever a child custody order from New Jersey. In fact, Mother's position at the outset of the proceedings was there were no cases from New Jersey and paternity had not been established for either child. Mother explicitly asserted: "There is no case pending in New Jersey that [M]other is aware of with regard to these children, either of these children." Thus, the operative jurisdictional provision based on Mother's representations was K.S.A. 23-37,204(b), which provides:

> "If there is no previous child-custody determination that is entitled to be enforced under this act and a child-custody proceeding has not been commenced in a court of a state having jurisdiction under K.S.A. 23-37,201 through 23-37,203, and amendments thereto, *a child-custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under K.S.A. 23-37,201 through 23-37,203*, and amendments thereto. If a child-custody proceeding has not been or is not commenced in a court of a state having jurisdiction under K.S.A. 23-37,201 through 23-37,203, and amendments thereto, a child-custody determination made under

5

this section becomes a final determination, if it so provides and this state becomes the home state of the child." (Emphasis added.)

Here, no such order was obtained until after the district court entered its final order terminating Mother's parental rights. The relevant journal entry from the New Jersey court did not become a part of the record until after Mother filed her notice of appeal. The district court properly exercised temporary emergency jurisdiction under K.S.A. 23-37,204(a) based on the circumstances in which the children were found. Based on both Mother's and the State's express representations at the outset of the case, the district court's continued exercise of jurisdiction was proper under K.S.A. 23-37,204(b). However, the supplemental evidence of a prior custody order from the New Jersey court requires us to remand the matter to the district court so it can communicate with the New Jersey court as required under K.S.A. 23-37,204(d). The lower courts must determine which court should exercise continuing jurisdiction under the applicable provisions of K.S.A. 23-37,201 through 23-37,203.

We decline to reach the merits of the other issues raised on appeal. The district court, in consultation with the New Jersey court, must determine whether it can and will exercise jurisdiction over the proceedings under the UCCJEA. If the district court lacks jurisdiction, we also lack jurisdiction. *In re Care and Treatment of Emerson*, 306 Kan. 30, 39, 392 P.3d 82 (2017). Thus, we will not opine as to points we may not be empowered to resolve.

We remand to the district court to confer with the New Jersey court under the procedures set forth in the UCCJEA to determine which court will exercise jurisdiction. If the New Jersey court exercises jurisdiction, the matter must be dismissed. If the district court retains jurisdiction, the remaining issues may be addressed thereafter.

Remanded with directions.